UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES A. SCHOCH,

                          Plaintiff,

            -against-

JUDGE MARY ANN SCATTARETICO-
NABER (THE COURT); SHARI RACKMAN;
DAVID PECK; JENNIFER DEMERS,

                          Defendants.

7:24-CV-2294 (CS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

CATHY SEIBEL, United States District Judge:

Plaintiff James A. Schoch, of Kunkletown, Pennsylvania, brings this action *pro se*

seeking $6,800,000 in compensatory damages and $3,200,000 in punitive damages.[1] He asserts

claims of federal constitutional violations under 42 U.S.C. § 1983. He does not set forth claims

under state law, although he may intend to, and he cites to state rules of professional conduct for

attorneys. Plaintiff sues the following individuals: (1) Judge Mary Anne Scattaretico-Naber, of

the New York Family Court, Westchester County, who appears to have presided over Plaintiff's

Family Court proceedings; (2) Shari Rackman, Esq., the attorney that has represented the mother

of Plaintiff's child in those proceedings; (3) David Peck, Esq., an attorney that has been

appointed by the Family Court to represent Plaintiff's child in those proceedings; and

(4) Jennifer Demers, the mother of Plaintiff's child. Plaintiff alleges that: (1) Judge Scattaretico-

Naber is assigned to a courthouse in Yonkers, New York; (2) Rackman's office is located in

Tarrytown, New York; (3) Peck's office is located in Harrison, New York; and (4) Demers resides

in Croton-on-Hudson, New York.

---

[1] Plaintiff has paid the fees to bring this action.

For the reasons discussed below, the Court dismisses this action, but grants Plaintiff leave to replead certain specified claims in an amended complaint to be filed within 30 days of the date of this order.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the fees to bring the action, if it determines that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that the Court lacks subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court also may dismiss an action for failure to state a claim, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted), *abrogated on other grounds*, *Murphy v. Hughson*, 82 F.4th 177 (2d Cir. 2023).

The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). District courts generally should grant self-represented plaintiffs an opportunity to amend a complaint to cure its defects unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim. . . ." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

**BACKGROUND**

Plaintiff alleges that the events that are the bases of his claims occurred in August 2019, and have also occurred between August 2020 and the present, at the New York Family Court, Westchester County, located in Yonkers. Plaintiff also alleges the following:

> In over four (4) years (five + years if you count the family court battle in Florida), . . . Plaintiff has experienced false allocations and hearsay, has been geographically alienated from the child, lack of proper paperwork being filed (motions, petitions, OTSC, etc.), delays in making decisions by having Plaintiff submit [the] same requests numerous times, lack of a speedy trial, legal rights stripped away, joint legal custody ignored, verbally and mentally abused, my [post-traumatic stress disorder] ignored, [i]ntentional infliction of emotional distress, discrimination by [t]he [c]ourt, and not allowing. . . . Plaintiff to be a father and have quality time and a relationship with the child. [*sic*]

(ECF 1, at 4.) He has not received "justice according to the laws of the nation , but . . . according to family court laws in Westchester County." (*Id.*) The Family Court has held "[c]ontinuing 'conferences' . . . with no decisions made [and] judge . . . /lawyer only meetings, [a] lawyer [has] pa[id] a judge . . . , [and the Family Court has] blatantly delay[ed] decisions until [the] child is old enough to enter kindergarten." (*Id.*)

Allegedly, seven weeks after Plaintiff's child was born in July 2019, Demers, the mother of Plaintiff's child, without Plaintiff's knowledge and while Plaintiff was under the assumption that Demers and Plaintiff would live together with the child, absconded to Florida with the child. In August 2019, Plaintiff filed petitions in the Family Court, but they were ignored. "[B]etween September 2019 [and] September 2020[,] the battle for the child played out in Florida until . . . Demers withdrew her petition in October 2020[,] when she returned to New York." (*Id.* at 5.) The Family Court issued:

> [a]n unjustifiable Temporary Order of Protection . . . [on] Plaintiff upon hearsay, and not evidence. [He] was/is a lawful owner of firearms with a resident Pennsylvania CCW (Concealed Carry Weapon) license with 30 [r]eciprocity [with] other states for 14 years, and a non-resident Florida CCW license with 30 [r]eciprocity [with] other states for a[t] least 20 years, as well as an ATF/FFL

> (Alcohol, Tobacco, Firearms/Federal Firearms License), and a Pennsylvania
> hunting license for years [*sic*]. The [Family] Court issued an impossible demand
> for . . . Plaintiff to surrender his firearms to the police in Pennsylvania[,] which
> was/is impossible for . . . Plaintiff to do according to the laws of Pennsylvania. . . .
> The Court, . . . Rackman and . . . Peck would not acknowledge Pennsylvania laws
> and insisted [that] Plaintiff follow New York laws. Pennsylvania does not, and
> will not, follow New York firearms laws nor [is it] required to do [so]. For over
> six months, [t]he [Family] Court, . . . Rackman and Peck, forced me to be in the
> middle of two different states' laws.[2]

(*Id.* at 5-6.)

Plaintiff complied with Pennsylvania law by "surrender[ing] the firearms to a designated
armory that rendered a monthly service charge to him." (*Id.* at 6.) Demers, however, took
"advantage of his situation" by claiming, "after approximately 2 years in custody courts, [that]
she feared . . . Plaintiff by adding another false allocation [*sic*]for the Protection Order." (*Id.*)
Demers made such accusations despite "no domestic violence or injunctions filed against . . .
Plaintiff in five plus years." (*Id.*) Two "virtual home inspections" revealed that Plaintiff had no
firearms in his home. (*Id.*) Demers was not directed to undergo any home inspections. "Forensics
were ordered. One forensic report was submitted and accepted [by the Family] Court; the other
report was not." (*Id.* at 7.)

Despite only three separate supervised visits between Plaintiff and the child, "countless
court appearances, [and a] stipulation agreement, which was impossible to obey," the Family
Court has made "no decisions."[3] (*Id.*) The Family Court, Rackman, and Peck have allowed
Demers to "reside with her significant other, Mr. Joseph McAllister, who is known to have
domestic abuse charges as well as child neglect on him." (*Id.*) Because of a statement made by

---

[2] Plaintiff describes himself as "an avid hunter of rabbits, ducks, geese, turkeys, and
deer[,] [and that, as a result of the restrictions on his use of firearms, he] could no longer provide
food for [his] family, especially during the Covid pandemic." (ECF 1, at 6.)

[3] Plaintiff's reference to "no decisions" appears to be with respect to an awaited Family
Court child-custody decision.

the child, Plaintiff asked for an investigation by the Administration for Children's Services (ACS), but he never received a copy of any investigation report, and McAllister's records were sealed.

Plaintiff specifically accuses Rackman of violating Rule 1.7(b), Part 1200, of the New York State Unified Court System's Rules of Professional Conduct ("Rule 1.7(b)"). He also accuses Peck of violating the New York State Bar Association's ("NYSBA") "Committee on Children and the Law B-2 Conflict Situations by representing . . . Demers and . . . McAllister at the same time and each other's children [*sic*]." (*Id.* at 7-8.)

## DISCUSSION

### A.    Plaintiff's claims on behalf of others

To the extent that Plaintiff asserts claims on behalf of others, including his and Demers's minor child, Demers herself, McAllister, and/or Demers's or McAllister's other children, including any claims arising out of any conflicts of interests that Plaintiff perceives Rackman and/or Peck may have with regard to representing any or all of those other individuals, the Court must dismiss those claims. The provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted). Generally, a non-attorney parent cannot bring an action on behalf of his minor child in federal court without counsel. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Additionally, "because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *Cheung v. Youth Orch. Found. of*

5

*Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[I]t is not in the interests of minors . . . that they be represented by non-attorneys.").

Plaintiff has alleged no facts suggesting that he is an attorney. He cannot, therefore, assert any claims on behalf of anyone else. The Court therefore dismisses, without prejudice, any claims that Plaintiff is asserting on behalf of anyone else.

**B.     Claims under Section 1983 against Judge Scattaretico-Naber**

The Court must dismiss Plaintiff's claims under Section 1983 against Judge Scattaretico-Naber. Judges are absolutely immune from suit for damages with respect to claims against them under Section 1983 for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when a judge takes action outside her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The United States Court of Appeals for the Second Circuit has specifically applied this immunity to New York Family Court judges. *Deem v. DiMella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019); *see Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37-38 (2d Cir. 2021) (summary order); *Parent v. New York*, 485 F. App'x 500, 504 (2d Cir. 2012) (summary order).

Plaintiff seems to assert claims for damages under Section 1983 against Judge Scattaretico-Naber arising from her rulings and decisions with regard to the abovementioned proceedings before her in the Family Court. Thus, as Judge Scattaretico-Naber was well within her authority to make such rulings and decisions, she is immune from suit for damages with respect to Plaintiff's Section 1983 claims against her. The Court therefore dismisses these claims under the doctrine of judicial immunity and because they are frivolous. *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* ("IFP") statute]."); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

### C.    Claims under Section 1983 against the remaining defendants

The Court must dismiss Plaintiff's claims under Section 1983 against Rackman, Peck, and Demers. To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). "The traditional definition of acting under color of state law requires that the defendant . . . exercise[ ] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (internal quotation marks and citation omitted). "Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under Section 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted). Private parties generally are not state actors, and therefore are not usually liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d

399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private attorney's legal representation of a private person does not constitute state action for the purpose of stating a claim under Section 1983 against that attorney, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender, *see Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981), and *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)); *see also Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position.").

Plaintiff alleges that Rackman and Peck are private attorneys, and that Rackman has represented Demers, and that Peck has been appointed by the Family Court to represent Plaintiff's and Demers's child. He also seems to allege that Demers is a private citizen. Yet, he alleges no facts showing that Rackman, Peck, or Demers has acted as a state actor with regard to his federally protected rights. Thus, the Court dismisses Plaintiff's claims under Section 1983 against Rackman, Peck, and Demers for failure to state a claim on which relief may be granted. The Court, however, grants Plaintiff leave to amend his complaint, as to these claims if he can do so in good faith, to allege facts showing how these defendants have acted as state actors when they have violated his federally protected rights. *See Wachtler*, 35 F.3d at 82.

**D.    Claims under state law**

While the Court has dismissed Plaintiff's claims under federal law (those under Section 1983), Plaintiff may intend to assert claims under state law. Accordingly, the Court will examine

whether it can consider such claims under its diversity jurisdiction or under its supplemental jurisdiction.

### 1. Diversity jurisdiction

The original subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has original subject matter jurisdiction only when a "federal question" is presented or, if the plaintiff is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); see Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG*, 526 U.S. at 583 ("[S]ubject-matter delineations must be policed by the courts on their own initiative. . . .").

To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or

she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232

F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has

but one domicile." *Id.* With respect to an action brought under the court's diversity jurisdiction,

the parties' state citizenship is established at the time of the commencement of the action. *See,*

*e.g.*, *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959) ("Generally, in a diversity action, if

jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work

an ouster of jurisdiction."). The plaintiff must also allege to a "reasonable probability" that his or

her claims under state law are in excess of the sum or value of $75,000, the statutory

jurisdictional amount. *See* § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214,

221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Plaintiff seems to allege that he is a citizen of the Commonwealth of Pennsylvania, and

that Demers is a citizen of the State of New York. (ECF. 1, at 3.) He does not, however,

affirmatively allege facts showing the state citizenships of the other defendants, only describing

their places of employment within the State of New York. (*Id.*) Plaintiff, therefore, does not

show that the parties are diverse. In addition, he does not allege facts sufficient to show that his

claims under state law are in excess of the sum or value of $75,000, the statutory jurisdictional

amount to invoke this court's diversity jurisdiction. Thus, to the extent that Plaintiff asserts any

claims under state law under the court's diversity jurisdiction, the Court dismisses these claims

for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants

Plaintiff leave to replead any claims that he may assert under state law in an amended complaint

in which he alleges facts sufficient to show that the court has diversity jurisdiction over those

claims; he must allege: (1) facts showing that he and all of the defendants named in his amended

complaint were not, at the time of the filing of his original complaint, citizens of the same State; and (2) facts showing that his claims under state law exceed the sum or value of $75,000.[4]

### 2. Supplemental jurisdiction

Plaintiff appears to alternatively assert claims under state law under the court's supplemental jurisdiction to consider them. A federal district court may decline to exercise supplemental jurisdiction over claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). In addition, "[i]n the absence of diversity jurisdiction, because the Court has dismissed the federal claims brought in this action, it may decline to exercise supplemental jurisdiction pursuant to . . . [Section] 1367(c)(3)." *Golub v. Berdon LLP*, No. 19-CV-10309 (JGK), 2021 WL 637974, at *5 (S.D.N.Y. Feb. 17, 2021). Having dismissed those of Plaintiff's claims over which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction over any of his claims under state law.[5] *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of

---

[4] The Court notes that neither Rule 1.7(b) nor the NYSBA's determinations themselves provide for a cause of action under state law.  Further, if Plaintiff intends to assert a claim for intentional infliction of emotional distress under New York law, he should be aware that it is "a highly disfavored cause of action under New York law, one that is almost never successful," *Coleman v. Grand*, 523 F. Supp. 3d 244, 266 (E.D.N.Y. 2021), and requires a plaintiff to surmount an "exceedingly high bar," *id.* at 267.

[5] If Plaintiff files an amended complaint asserting claims under federal law, including claims under Section 1983, under the court's original federal question jurisdiction, as well as claims under state law, under the court's supplement jurisdiction, and if the Court subsequently dismisses all of his claims under federal law, the Court will then decline to consider, under its supplemental jurisdiction, his claims under state law. *See* § 1367(c)(3). The Court cannot, however, decline to consider claims under state law if it has original diversity jurisdiction to consider those claims. *See* § 1332(a).

§ 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill*, 657 F.3d at 123-24; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  The Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims, as specified above, if he is able to allege additional facts to state a valid claim under Section 1983 and/or under state law,

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

Any amended complaint must be far more specific.  Plaintiff needs to detail exactly what conduct, on the part of what Defendant, he alleges to have violated what right.  It will not suffice simply to allege that an action was wrongful; the amended complaint must specify the facts that show it was wrongful, who was responsible and what right was thereby violated.  Conclusory allegations do not suffice; there must be sufficient factual material to render the claims plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## CONCLUSION

The Court dismisses this action, but grants Plaintiff 30 days' leave to replead his clams in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. Specifically, the judgment will: (1) dismiss Plaintiff's claims that he asserts on behalf of others without prejudice; (2) dismiss Plaintiff's claims under 42 U.S.C. § 1983 against Judge Scattaretico-Naber under the doctrine of judicial immunity, and as frivolous; (3) dismiss Plaintiff's claims under Section 1983 against the other defendants for failure to state a claim on which relief may be granted; and (4) dismiss Plaintiff's claims under state law for lack of subject matter jurisdiction and, alternatively, the Court will decline to consider such claims under its supplemental jurisdiction.

Defendants' requests, (ECF Nos. 6, 8) are denied as moot.  Defendants may renew any such requests if appropriate following the filing of an amended complaint.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   May 16, 2024
         White Plains, New York

_____
         CATHY SEIBEL
         United States District Judge